UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WALTER BOHL,                          :
        Plaintiff,                    :    NO. 1:06-cv-00008
                                      :
                                      :    **OPINION AND ORDER**
   v.                                 :
                                      :
                                      :
CAMPBELL HAYSFELD/a Scott             :
   Fetzer Company,                    :
        Defendant.                    :
                                      :

        This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 26), Plaintiff's Memorandum in Opposition to
Defendant's Motion for Summary Judgment (doc. 36), and Defendant's
Reply Memorandum in Support of its Motion for Summary Judgment
(doc. 41).  For the reasons indicated herein, the Court DENIES
Defendant's Motion for Summary Judgment for the federal age
discrimination and family medical leave act claims and GRANTS
Defendant's Motion for Summary Judgment for the state age
discrimination and state public policy claims.

## I.  Background

        In this age discrimination and Family and Medical Leave Act
discrimination/retaliation case, Plaintiff Walter Bohl
("Plaintiff"), a sixty-one year old Senior Project Engineer, was
terminated in a reduction in force ("RIF") by Defendant ("the
Company").

        The basic facts of this case, as drawn from the pleadings are
fairly summarized as follows.  Plaintiff was employed by the

Company" for eight years, and, at the time he was hired, had over thirty years of experience working as an engineer, including eighteen as a manager of new product development, for a number of other companies (doc. 6). Some of Plaintiff's other credentials included a Professional Engineering certification and an MBA degree (<u>Id</u>.).

In 2003, the Company began having profitability problems (doc. 48). Subsequently, the Company's president, Mr. Heeman, decided to alter the Company's organizational structure and business strategy (<u>Id</u>.). Ultimately, the re-organization was accomplished by combining operation areas and reducing the workforce (<u>Id</u>.). In 2004, Mr. Heeman and the Company's Human Resources Department requested evaluations of current employees to consider when determining who would and would not remain with the company after the re-organization and RIF (doc. 49).

In April 2004, Plaintiff took a six-week leave from work, under the FMLA, to recover from prostate cancer surgery (doc. 6). While Plaintiff was on leave, Mr. Humpert ("Humpert"), the Director of Marketing for Plaintiff's division, conducted evaluations of all the employees in Plaintiff's division (doc. 49). For his evaluations, Humpert used a form that combined components of the Company's standard Human Resources evaluation form with adaptations that he thought would allow for a more "forward-looking" evaluation (<u>Id</u>.). Humpert's goal in conducting these evaluations was to make

a "forward-looking evaluation of the talent and how those people would best adapt to ... the direction the [C]ompany would be moving in and the talents ... needed to support that direction" (<u>Id</u>.). Humpert evaluated the employees in his division on nineteen criteria, thirteen of which were provided from the standard Human Resources performance evaluation form and six of which Humpert added to make the evaluations more forward-looking (<u>Id</u>.). Humpert also left space for three handwritten factors that could be customized according to the employee and the particular position (<u>Id</u>.). Humpert awarded each employee a score of 1 (low) to 5 (high) on each criterion (<u>Id</u>.). The criteria provided on the standard Human Resources performance evaluation form were: attendance, punctuality, appearance & habits, quality/accuracy, quantity of work, initiative/reliability & supervision required, perseverance, stability, cooperation & promotes mutual respect, interest/teamwork, responsibility/initiative, judgment/problem solving, and job knowledge (<u>Id</u>.). The criteria added by Humpert were: timely response to customers, attitude toward department, participative team member, overall attitude toward company, pursues self-improvement/education/training, and ability to multi-task (<u>Id</u>.). At issue in this case are the methods that Humpert used to score the employees on the evaluation forms. For example, in his deposition, Humpert claims that to evaluate employees on attendance and punctuality, he did not consult any attendance

records, but instead relied on "general observance" because his office was "near the entrance" and employees had to "walk past [the] office every day coming and leaving (Id.)." Humpert also testifies that he evaluated employees for "appearance & habits" based on "seeing them in and around the workplace," although Humpert was unable to give any examples of why another employee scored higher than Plaintiff (Id.). Regarding employees' evaluations for "quality-accuracy," Humpert testifies that he only considered his own perceptions based on projects that he had worked on with employees (Id.). Consequently, Humpert did not consider employees' past performance evaluations, even if he had not worked on a project with an employee for years (Id.).

Plaintiff's score on Humpert's evaluation was among the lowest (Id.). On May 10, 2004, Plaintiff returned from his six-week absence at the age of sixty-one (doc. 36). The Company terminated Plaintiff's employment two weeks later, on June 2, 2004 (Id.).

Plaintiff initiated this matter on January 10, 2006, alleging that his termination violated (1) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et seq.; (2) Age Discrimination in Employment under Ohio Law, Ohio Revised Code §§ 4112.14 and 4112.99; (3) Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 et seq.; and (4) Ohio public policy against medical leave discrimination (doc. 1). On June 1, 2007, the Company filed a Motion for Summary Judgment on all four of Plaintiff's claims

(doc. 26).  On December 10, 2007, Plaintiff filed a Response in Opposition to the Company's Motion for Summary Judgment (doc. 36). On January 24, 2008, the Company then filed a Reply in Support of its Motion for Summary Judgment (doc. 41).  The Court held a hearing on the Motion for Summary Judgment on April 30, 2008.

## II.  The Summary Judgment Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary

judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see also</u> <u>LaPointe</u>, 8 F.3d at 378; <u>Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 405 (6th Cir. 1992); <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. <u>See</u> <u>Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.</u>, 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. <u>See</u> <u>Celotex</u>, 477 U.S. 317; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of <u>material</u> fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis added);

see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough simplicity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weight evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III. Discussion

### A. Federal Age Discrimination Claim

Plaintiff brings his claim for age discrimination under the ADEA, a federal statute which prohibits an employer from discriminating against employees on the basis of age. 29 U.S.C. § 623(a). Under this statute, a plaintiff may assert a prima facie case through direct or indirect evidence. Allen v. Ethicon, Inc., 919 F. Supp. 1093, 1098 (S.D. Ohio 1996). Because direct evidence can be difficult to provide in employment discrimination cases, the law also allows a plaintiff to bring an inference of discrimination through circumstantial evidence with the McDonnell Douglas test. McDonnell Douglas v. Green, 411 U.S. 792 (1973). This test allows

-8-

a plaintiff to establish a prima facie case, using circumstantial evidence, by meeting these four prongs: (1) plaintiff must be at least 40 years old, (2) plaintiff must have been subject to an adverse employment decision, (3) plaintiff must have been qualified for his position, and (4) plaintiff must have been replaced by someone outside the protected class. Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538-39 (6th Cir. 2002). More specifically, where the adverse employment action that the plaintiff suffered occurred during a RIF, the plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons" to satisfy the fourth prong of the McDonnell Douglas test. Barnes v. Gencorp, Inc., 896 F.2d 1457, 1465 (6th Cir.) cert. denied, 498 U.S. 878 (1990).

Once a plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for the employment decision. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must be afforded an opportunity "'to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 253). The plaintiff may demonstrate the pretextual nature of the offered

reason for the employment decision by establishing (1) that the proffered reason had no basis in fact, or (2) the proffered reasons did not actually motivate the discharge, or (3) the proffered reasons were insufficient to motivate discharge. Manzer v. Diamond Shamrock Chem Co., 29 F.3d 1078, 1084 (6th Cir. 1994).

In this case, neither party contests the fact that Plaintiff meets the first three prongs of the McDonnell Douglas test. Plaintiff was more than forty years old, he suffered an adverse employment action when he was terminated, and he was qualified for his position. However, with respect to the fourth prong, the Company argues that Plaintiff lacks sufficient evidence to support his claim for age discrimination (doc. 26). The Company argues that Plaintiff's age discrimination claim is based solely on his age and membership in the protected class (Id.). Furthermore, the Company argues, retention of a younger employee while an older employee is terminated in a RIF, taken alone, is not sufficient to establish that age was the basis for the decision (Id., citing Brown v. EG&G Mound Applied Techs., 117 F.Supp.2d 671, 678 (S.D. Ohio 2000)(Spiegel, J.)). The Company suggests that because Plaintiff is unable to provide any evidence that the Company singled him out for termination because of his age, he is unable to establish a prima facie case and his claim should fail as a matter of law (doc. 26).

In response, Plaintiff argues that he can provide sufficient

evidence of the Company's unlawful age bias through the evaluation process used to determine which employees would be terminated in the RIF (doc. 36).  Plaintiff points to the irregularities in the evaluation process and the subjectivity of Humpert's evaluations to support his argument that the Company wrongfully considered Plaintiff's age in his evaluation (Id.).  Plaintiff argues that he scored better than his younger co-workers on past performance evaluations, but scored worse in the RIF evaluation which demonstrates that the irregular evaluation process employed an unlawful age bias (Id.).  Additionally, Plaintiff argues that Humpert's evaluation of nineteen employees in twenty-one categories each, conducted in four or five hours, would have been so hasty that Humpert must have relied on some biases and stereotypes (Id., citing Minnesota v. Independent School District No. 701, 1990 WL 35601 (Ct. App. Minn. 1990)).  Plaintiff also notes that Humpert admitted to not having a basis for many of his evaluations regarding his experience in conducting evaluations, his instructions on how to conduct the evaluations, his lack of an engineering degree, his failure to check attendance records, his lack of specific criteria for rating employees' "Appearance & Habits," and his failure to seek others' input in categories where he had no direct knowledge or experience to use for his evaluation (Id.).  Plaintiff argues that Humpert strangely chose to ignore relevant qualifications like management experience, Professional

Engineering certification, and an MBA (Id.). Plaintiff also points to contradictions within Humpert's testimony as evidence of his underlying age bias (Id.). Plaintiff contends that these factors, taken together, are sufficient evidence to allow a reasonable jury to conclude that the Company exercised an age bias through the RIF (Id.).

The Company responds to the evidence presented by Plaintiff by arguing that Plaintiff fails to put forth any evidence sufficient to meet the fourth prong of a prima facie case in a RIF case (doc. 41). The Company argues that the statistics put forth by the Plaintiff are insufficient because they do not compare similarly situated employees (Id., citing Gatch v. Milacron, Inc., No. 02-3168, 111 Fed. Appx. 785, 2004 WL 2030045, at *3 (6th Cir. August 31, 2004)). For example, the statistics compare employees who had been employed with the Company longer than Plaintiff, who were evaluated by different supervisors than Plaintiff, and who held higher level positions than Plaintiff (doc. 41). Furthermore, the Company argues, even if Plaintiff's statistics had provided evidentiary support to show that Plaintiff was more qualified than employees which the Company did not terminate, in this case, the Company did not base its rankings on the same criteria that Plaintiff uses to determine who is most "qualified" (Id.). The Company, because it was making a "forward-looking" evaluation, focused on selecting employees best suited for the emerging New

Product Development segment (Id.).  The Company argues that "[e]ven if the Company's choice of criteria was not the wisest or most prudent, that does not constitute evidence that Bohl was selected because of his age" (Id., citing Norbuta v. Loctite Corp., 2001 WL 45114, at *8; Cotton v. City of Alameda, 812 F.2d 1245, 1249 (9th Cir. 1987)).  In sum, the Company argues that none of Plaintiff's criticisms of the RIF evaluation process support an inference of age discrimination (doc. 41).  Furthermore, the Company argues, even if any of Plaintiff's criticisms did satisfy all the elements of a prima facie case, the Company's RIF was a legitimate, non-discriminatory reason for Plaintiff's termination (Id.).

In response to the Company's argument that the RIF was a legitimate reason for Plaintiff's termination, Plaintiff contends that the Company's reasons were a pretext for unlawful age discrimination (doc. 36).  Plaintiff argues that the irregularities in the Company's evaluation process were significant enough in number and disparity of outcome to support an inference that the scores did not actually motivate the Company's decision to terminate Plaintiff, but were a cover-up for the Company's age bias for younger employees (Id., citing Henderson v. Pathfinder Commc'ns Group, No. C-1-91-568, 1992 WL 370602 (S.D. Ohio July 2, 1992)).  Plaintiff also argues that "[the Company's] business judgment is not beyond question," but that a factfinder may critically examine business judgment where it seems to be so inconsistent or irregular

that the Company could not truly have relied upon it (Id.).

Having reviewed this matter, the Court finds adequate circumstantial evidence to support Plaintiff's prima facie case regarding his federal age discrimination claim. Plaintiff clearly meets the first three elements of the prima facie case, and the question that arises is whether Plaintiff can prove, by direct, circumstantial, or statistical evidence that he was terminated because of age. Although the Company argues that Plaintiff was terminated based on a legitimate evaluation process that was focused on retaining the employees that would best fit the company's future direction and emphasis on New Product Development, a reasonable jury could find that Plaintiff has presented adequate evidence to show that the Company's reasons are pretextual.

Although a RIF may serve as a legitimate and non-discriminatory reason for terminating qualified employees, if the company does not offer objective and measurable criteria for their decisions, a reasonable jury could determine that the company's reasons are merely a cover-up for some illegitimate and discriminatory reasons for terminating employees. Objective factors could include salaries and how much one employee's job duties overlap with those of other employees. Horak v. Glazer's Wholesale Drug Co., Inc., 2007 WL 713154 (C.A.5 (Tex.)). Although "[t]he mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext," Manning v. Chevron Chem.

-14-

Co., LLC, 332 F.3d 874, 882 (5th Cir. 2003), when presented alone, multiple insufficient arguments for pretext can be combined and, when "[v]iewed in their totality[,] . . . sufficiently demonstrate pretext." Martin v. AT&T Corp., 331 F.Supp.2d 1274, 1293 (D. Colo., 2004). Ultimately, the Court must decide whether "a jury question is presented as to whether the [D]efendant[] would have made the same decision absent consideration of [Plaintiff's] age." Gonnerman v. McHan Construction, Inc., 520 F.Supp.2d 1095 (N.D.Iowa, 2007) (citing Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376-77 (8th Cir. 1996)).

In this case, Plaintiff's arguments (that there were significant irregularities in the Company's evaluation process, that Humpert conducted the evaluations in a hurried fashion, that many of the evaluation categories were scored highly subjectively, and that Humpert lacked bases for many of his evaluation scores) may be individually insufficient to sufficiently demonstrate pretext on their own. However, when all of Plaintiff's arguments are viewed together, a reasonable jury could conclude that the Company's reasons and business judgment used in the decision to terminate Plaintiff are too error-ridden and inconsistent to have actually been relied upon by the Company. In this case, the parties' arguments present a jury question regarding whether the Company used the evaluation process and the RIF as a cover-up for unlawful age discrimination. It is then for a jury to decide

-15-

whether the Company would have terminated Plaintiff if Plaintiff's age had not been considered. For these reasons, the Court finds that Plaintiff has presented sufficient evidence to survive the Company's motion for summary judgment on the claim for age discrimination in violation of the ADEA.

**B. State Age Discrimination Claim**

Plaintiff also brings a complaint for age discrimination under the Ohio law which prohibits an employer from discharging "without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job." Ohio Revised Code § 4112.14(A). The Company argues that Plaintiff's state age discrimination claim should fail as a matter of law, because Plaintiff chose to file a charge of discrimination with the Ohio Civil Rights Commission, which barred him from filing a subsequent civil claim on the same grounds according to Ohio Rev. Code Ann. §§ 4112.05 and 4112.08 (Id.). Furthermore, the Company points out, Plaintiff's claim should fail as a matter of law because the statute of limitations on such matters is 180 days, according to R.C. § 4112.99, and Plaintiff did not file his suit until January 10, 2006, although he was terminated on June 2, 2004 (Id.).

Plaintiff failed to respond to these arguments.

Having reviewed this matter, the Court finds that Plaintiff's claim for age discrimination in violation of O.R.C. §§ 4112.14 and

-16-

.99 cannot survive the Company's motion for summary judgment under Ohio Rev. Code Ann. §§ 4112.05 and 4112.08, because Plaintiff sought administrative remedies by filing a charge of discrimination with the Ohio Civil Rights Commission, and, furthermore, because Plaintiff failed to file his complaint within the 180 day statute of limitations required by O.R.C. § 4112.99.  For these reasons, the Court finds that the Company's Motion for Summary Judgment on the claim for age discrimination in violation of Ohio Revised Code §§ 4112.14 and 4112.99 should be granted.

### C. FMLA Discrimination Claim

Plaintiff brings his FMLA discrimination/retaliation claim under 29 U.S.C.A. §§ 2601 et. seq., which was enacted to allow employees to take a leave from work for serious family or medical needs without suffering adverse employment actions as a result. Under this statute, a plaintiff may assert a prima facie case by showing that (1) he availed himself of a protected right under the FMLA, (2) he suffered an adverse employment decision, and (3) a causal connection exists between the plaintiff's exercise of his FMLA rights and the adverse employment decision. Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309 (6th Cir. 2001).  In other words, to show the third element of the prima facie case, a plaintiff must show that his leave was condsidered in the employer's adverse decision.

In this case, the Company argues that Plaintiff's claim for

-17-

FMLA discrimination/retaliation must fail because Plaintiff is unable to establish that his absence was considered in the Company's decision to terminate him (doc. 26). Failing to prove this element, the Company argues, Plaintiff is unable to make a prima facie case (Id.).

In response to the Company's arguments, Plaintiff puts forth evidence to satisfy the third element of the prima facie case. Plaintiff argues that the proximity in time between his medical absence and the Company's decision is additional, sufficient evidence of the causal link between Plaintiff's protected FMLA leave and the Company's unlawful discrimination/retaliation (doc. 36, citing Skrianc, 272 F.3d at 314; Moon v. Transport Drivers, Inc., 836 F.2d 226, 229 (6th Cir. 1987)).

In response, the Company argues that temporal proximity is insufficient to establish a causal connection between the FMLA leave and the termination to present a prima facie case (doc. 41, citing Coulter v. Deloitte Consulting, L.L.C., 79 Fed. Appx. 864 (6th Cir. 2003)).

Under McDonnell Douglas, if a defendant can present a legitimate reason for termination, the plaintiff must then counter with evidence that the articulated reason is a pretext to mask discrimination. McDonnell Douglas Corp., 411 U.S. at 804-06. Pretext can be established "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the

-18-

defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." <u>Dews v. A.B. Dick Co.</u>, 231 F.3d 1016, 1021 (6th Cir. 2000).

In this case, the Company argues that even if Plaintiff could establish a <u>prima facie</u> case of FMLA discrimination/retaliation, he does not have sufficient evidence to show that the Company's legitimate RIF was a pretext for the adverse employment action (doc. 26).

In response to these arguments, Plaintiff presents further evidence of the Company's illegitimate consideration of Plaintiff's protected leave and points to multiple specific ways that his evaluation was negatively affected (doc. 36). Plaintiff claims that his evaluation score for "attendance" was impacted by the Company's consideration of his absence because Humpert rated Plaintiff while he was on medical leave, which biased his perspective on Plaintiff's attendance and likely future attendance records (<u>Id</u>.). Plaintiff argues that considering his medical absence in this way is exactly what the FMLA was intended to prevent (<u>Id</u>., citing <u>Schmauch v. Honda of America Manufacturing, Inc.</u>, 295 F.Supp.2d 823, 829, <u>quoting</u> <u>Chaffin v. John H. Carter Co., Inc.</u>, 179 F.3d 316, 319 (5th Cir. 1999)). Plaintiff also argues that his ratings for "quantity of work," "punctuality," and "appearance" were likely impacted by consideration of his FMLA leave due to the way that Humpert chose to conduct the evaluations

and that thus the Company's proffered reasons for terminating Plaintiff were pretextual (Id.).

The Company responds to Plaintiff's arguments by reasserting that Plaintiff fails to bring evidence that shows that his scores on the RIF evaluation were actually impacted by his absence from work (doc. 41). The Company argues that Humpert, while conducting Plaintiff's evaluations could not have considered his FMLA leave against him, because he was not even aware that Plaintiff was on a medically related absence (Id.). Furthermore, the Company again argues that Plaintiff scored among the lowest in the RIF evaluations, and was terminated for that reason, excluding any consideration of a FMLA leave (Id.).

Having reviewed this matter, the Court finds that Plaintiff has presented adequate circumstantial evidence to support his prima facie case regarding his FMLA discrimination/retaliation claim. Plaintiff clearly meets the first two elements of the prima facie case, because he was qualified for the FMLA leave that he took and because he suffered an adverse employment action when he was terminated. The question then becomes whether Plaintiff can prove that there was a causal connection between his protected FMLA leave and his termination. The Sixth Circuit has previously held that proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection. Skrjanc, 272 F.3d at 314; Chandler v. Specialty Tires of Am., 283

-20-

F.3d 818, 826 (6th Cir.2002) (stating that, in the FMLA context, "[p]roximity in time can raise a prima facie case of retaliatory discharge"); Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555 (6th Cir.2004); DiCarlo, 358 F.3d at 421; Ford v. General Motors, 305 F.3d 545, 554-55 (6th Cir.2002). Construing the evidence in a light most favorable to Plaintiff, the Court finds that a jury could reasonably infer a "causal connection" between Plaintiff's FMLA leave-taking and his termination.

The Court further finds that Plaintiff has introduced sufficient evidence from which a reasonable jury could find that Plaintiff's termination was pretextual. A plaintiff may not rely solely on his prima facie evidence to establish pretext, but must introduce additional evidence which challenges the credibility of the defendant's proffered explanations. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000); Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1083-85 (6th Cir. 1994). The Court finds Plaintiff has met this burden.

In this case, Plaintiff brings multiple sources of evidence to support his argument that the Company considered his absence in the decision to terminate his employment. While these sources of support, the temporal proximity and Humpert's evaluation method for example, may not be sufficient on their own to show that the Company's RIF was pretextual, when they are considered together, a reasonable jury could conclude that these factors support

-21-

Plaintiff's claim that he was terminated because of an unlawful consideration of his FMLA leave. Because the Plaintiff raised sufficient issues as to the evaluation process that led to his termination as well as issues regarding the close time proximity of his absence to his termination, it is appropriate in this case, to leave the question of the true reason behind Plaintiff's termination to a jury. For the aforementioned reasons, the Court denies the Company's Motion for Summary Judgment on Plaintiff's claim for FMLA leave violation.

**D. Ohio Public Policy Claim**

Plaintiff brings a claim for wrongful termination in contravention of Ohio Public Policy, arguing that it is against the state's public policy for the Company to have terminated Plaintiff's employment for illegitimate reasons (doc. 1). The Company argues that this claim cannot succeed under Ohio law where another applicable statute provides sufficient remedies (doc. 26). Plaintiff fails to respond to this argument.

The Court finds Plaintiff's Ohio public policy claim controlled by the holding in Wiles v. Medina Auto Parts, 96 Ohio St. 3d 240, 773 N.E.2d 526, 530 (2002)(plurality opinion), in which the Ohio Supreme Court found that a wrongful discharge in violation of public policy is not actionable when the claim is based on an FMLA violation. While such a discharge is clearly in violation of public policy, FMLA already provides adequate remedies to vindicate

Ohio's public policies against unlawful employment discrimination for legitimate medical absences, and therefore such claims are precluded under Ohio law. Id. Accordingly, the Court finds it appropriate to grant the Company summary judgment on Plaintiff's Ohio public policy claim.

**IV. Conclusion**

For the foregoing reasons, the Court finds that the Company's Motion for Summary Judgment should be GRANTED regarding Plaintiff's claims for State Age Discrimination and Ohio Public Policy Violation, but the Company's Motion for Summary Judgment should be DENIED regarding Plaintiff's claims for Federal Age Discrimination under the ADEA and FMLA Discrimination/Retaliation under the FMLA.


            SO ORDERED.


Dated: August 5, 2008            /s/ S. Arthur Spiegel
                                 S. Arthur Spiegel
                                 United States Senior District Judge